040439/01245/MHW/JJL

# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ANTHONY BOYCE, <br><br> Plaintiff, <br><br> v. <br><br> WEXFORD HEALTH SOURCES, INC. and TERRI ANDERSON, <br><br> Defendants. | Case Number 15-cv-7580 <br><br> Judge Amy J. St. Eve |

### LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

NOW COMES Defendant, WEXFORD HEALTH SOURCES, INC., by and through one of its attorneys, Matthew H. Weller and Joseph J. Lombardo of CASSIDAY SCHADE LLP, and for its Statement of Undisputed Material Facts Pursuant to Local Rule 56.1(a), states as follows:

### Description of the Parties

1. Plaintiff, ANTHONY BOYCE ("Plaintiff" or "Boyce"), is an inmate in the custody of the Illinois Department of Corrections ("IDOC") serving a life sentence for murder and solicitation of murder. (Exhibit 1 - Deposition Transcript of Anthony Boyce at 6:15-20).

2. Defendant, WEXFORD HEALTH SOURCES, INC. ("Wexford"), is a private corporation that has contracted with the IDOC to provide medical services to inmates at various correctional facilities, including Stateville Correctional Center ("Stateville") and Pontiac Correctional Center ("Pontiac"). (Exhibit 1 at 22:16-23:11).

### Venue and Jurisdiction

3. Jurisdiction and venue are proper because Plaintiff filed a federal claim under 42 U.S.C. § 1983 for an injury that allegedly occurred primarily within the Northern District of

Illinois while Plaintiff was an inmate at Stateville. (*See* Plaintiff's Second Amended Complaint (Court Doc. #26) at page 1 and ¶¶ 1-2).

### Factual Background

#### *Procedures Regarding Access to Medical Treatment at Stateville*

4. At both Stateville and Pontiac, if an inmate wants medical attention for a non-emergent condition, they must submit a written request to the Health Care Unit ("HCU"). This is done by submitting a medical request slip in a box located in the cell house or giving it to a medical technician. Alternatively, an inmate could make their medical needs known to medical technicians in the cell house. (Exhibit 1 at 8:10-10:12).

#### *Plaintiff's Alleged Medical Condition*

5. Plaintiff testified that the alleged medical condition that he refers to in his pleadings in this case is acid reflux, which is also known as gastroesophageal reflux disease (GERD). (Exhibit 1 at 13:10-16).

6. Acid reflux occurs when the valve at the entrance of the stomach, which is a ring of muscle called the lower esophageal sphincter, does not close all the way or if it opens too often. As a result, acid produced by your stomach can move up into your esophagus. (Exhibit 2 – Declaration of Saleh Obaisi, M.D. at ¶ 3).

7. Eating spicy or fatty foods are a common risk fact of acid reflux. (Exhibit 2 at ¶ 4). Common symptoms of acid reflux include a burning pain or discomfort that may move from your stomach to your abdomen or chest, or even up into your throat, bloating, bloody or black stools or bloody vomiting, burping, and nausea. (Exhibit 2 at ¶ 4).

8. In most cases, lifestyle changes combined with over-the-counter medications, such as antacids, are sufficient to control the symptoms of acid reflux disease. If antacids alone

do not help, a doctor may prescribe other medications, such as H2 blockers that decrease acid production, including Zantac and Pepcid). (Exhibit 2 at ¶ 5).

9. Plaintiff has also been diagnosed with Irritable Bowel Syndrome ("IBS"), which is a benign condition that does not have a pathological origin. Instead, this condition can be caused by a number of factors, such as eating spicy foods and stress. Patients with this condition often experience symptoms for years even with treatment. Symptoms of IBS commonly consist of cramping, abdominal pain, gas, diarrhea, and constipation. It is not a life-threatening or debilitating condition. IBS is typically treated with medication. (Exhibit 2 at ¶ 6).

### *Treatment Plaintiff Received For His Alleged Acid Reflux Condition*

10. According to Plaintiff's IDOC medical records, the first instance in which he complained of abdominal issues to medical personnel was April 11, 2011. On this occasion, Plaintiff presented to the HCU for a medical evaluation with Physicians' Assistant, La Tanya Williams, P.A. ("Williams"). Williams noted that Boyce complained of diarrhea, "tummy cramping" due to the drinking water, loss of 5 pounds, and dehydration. Upon physical examination, Plaintiff was within normal limits. Williams diagnosed Plaintiff with diarrhea. Williams prescribed Plaintiff Imodium, an anti-diarrheal medication; ordered laboratory testing, including a test for H. Pylori; and advised Plaintiff he would be called if the results of the test were positive. (Exhibit 1 at 43:20-46:10; and Exhibit 3 – relevant portions of Plaintiff's IDOC medical records at page 1).

11. On August 18, 2011, Plaintiff returned to the HCU for a follow-up evaluation with Williams, at which time he complained of diarrhea and intermittent stomach cramping, as well as unrelated bumps on his face and an oral problems. Williams noted Boyce reported the medication he received last time (Imodium) helped his stomach. Upon physical examination,

Plaintiff was within normal limits. Williams classified Plaintiff's condition as IBS. Williams refilled Plaintiff's prescription to Imodium; ordered laboratory testing, including a stool test for H. Pylori; and advised Plaintiff he would be called if the results of the test were positive. The results of the laboratory testing, including the H. Pylori stool test, did not reveal any abnormalities. (Exhibit 3 at pages 2-5).

12. On September 20, 2011, Williams authored a progress note indicating that she reviewed Boyce's chart in response to complaints of abdominal issues to other members of the medical staff. Williams ordered laboratory testing, and scheduled Boyce for a follow-up appointment. (Exhibit 3 at page 6).

13. On September 21, 2011, Plaintiff underwent laboratory testing, including a CMP, Lipids test, CBC, and urinalysis. The laboratory testing did not reveal any abnormalities. (Exhibit 3 at pages 7-10).

14. On September 28, 2011, Plaintiff again presented for a follow-up evaluation with Williams to discuss the results of the laboratory testing. During this appointment, Boyce complained of abdominal discomfort for the past several months, though Williams noted that he reported his medication (Imodium) helped his condition. Plaintiff also complained of several unrelated conditions, such as toe fungus and bumps on his scalp. Upon physical examination, Williams noted Plaintiff was within normal limits. Williams assessed Plaintiff's condition as "probable" IBS. Williams prescribed Plaintiff Bentyl, a medication used to treat stomach and intestinal cramping, and provided him with education regarding a proper diet and lifestyle choices. (Exhibit 3 at page 6).

15. On November 22, 2011, Plaintiff presented for an evaluation with Williams in connection with numerous medical complaints. Williams noted that Boyce reported that Bentyl

4

helped his condition. Thus, at Plaintiff's request, Williams refilled his prescription to Bentyl. (Exhibit 3 at page 12).

16. On January 17, 2012, Plaintiff presented to the HCU for an evaluation with the former Medical Director of Stateville, Imhotep Carter, M.D. ("Dr. Carter"). On this occasion, Boyce made numerous complaints, including chronic abdominal pain, pain in his gums, that his psychotropic medication was making his vision bad, and that the water is bad[1]. Dr Carter noted that Plaintiff reported that Bentyl helped his abdominal cramps, and that his weight was unchanged. Based upon his physical examination of Boyce, Dr. Carter found "no evidence of [gastroenterology] disorder." (Exhibit 3 at pages 13-14).

17. On April 2, 2012, Plaintiff was seen on the nurse sick call. On this occasion, Plaintiff reported a burning pain in his chest. The nurse noted that Plaintiff "seems to be in no major distress walking and talking." As such, the nurse provided Plaintiff with antacids and scheduled him for the physicians' sick call. (Exhibit 3 at page 15).

18. On April 6, 2012, Plaintiff presented for an evaluation with Williams. On this occasion, Plaintiff made numerous complaints, including abdominal cramps, burning in his chest due to an electrical fire, and burns to his left hand and wrist[2]. Williams noted that Boyce reported the medication he previously was prescribed helped his abdominal cramps. Upon physical examination, Williams noted Plaintiff was within normal limits. Williams diagnosed Plaintiff with an alteration in discomfort in the abdominal region. Williams refilled Plaintiff's prescription to Bentyl and provided patient education and reassurance regarding his condition. (Exhibit 3 at page 16).

---

[1] The unrelated complaints are the subject matter of several other of Plaintiff's other cases that have previously been dismissed.

[2] The unrelated complaints regarding burns to his wrist are alleged medical conditions are the subject of another case filed by Plaintiff that has previously been dismissed.

19. On August 10, 2012, Plaintiff presented to the HCU for an evaluation with Williams after an alleged suicide attempt[3]. On this occasion, Williams renewed Plaintiff's prescription to Bentyl at Boyce's request. (Exhibit 3 at pages 17-18).

20. On March 19, 2013, Plaintiff was brought to the HCU after an altercation with another inmate. On this occasion, Williams noted that Boyce reported intermittent "tummy cramps", and requested a refill of his medication. Williams refilled Plaintiff's prescription to Bentyl and provided him with patient education and reassurance. (Exhibit 3 at page 19).

21. On June 3, 2013, Plaintiff presented to Williams with complaints of pain in his tonsils, throat, and gums that purportedly developed in 2008 as a result of a dentist using unsterilized equipment[4]. Williams scheduled Plaintiff for the physicians' sick call the next day. (Exhibit 3 at page 20).

22. On June 4, 2013, Plaintiff presented for an appointment with former Stateville Staff Physician, Ann Davis, M.D. ("Dr. Davis"). On this occasion, Boyce complained of pain and swelling in his throat, gums, and teeth. Dr. Davis conducted a physical examination, and ordered laboratory testing. (Exhibit 3 at pages 21-22).

23. On June 18, 2013, Plaintiff underwent the laboratory testing that was ordered by Dr. Davis, including a CMP, CBC, and TSH. (Exhibit 3 at page 23).

24. On June 26, 2013, Plaintiff presented for an appointment with the current Medical Director of Stateville, Saleh Obaisi, M.D. ("Dr. Obaisi"). On this occasion, Plaintiff complained of pain in his mouth and throat. Upon examination, Plaintiff's mouth and throat were within normal limits. Dr. Obaisi prescribed Plaintiff Protonix, a medication used to treat erosive

---

[3] This attempted suicide attempt is the subject of another case filed by Plaintiff that resulted in a jury verdict in favor of the IDOC defendants.

[4] This alleged use of unsterilized dental equipment was the subject of another case filed by Plaintiff that was dismissed on summary judgment.

esophagitis associated with reflux disease. In addition, Dr. Obaisi scheduled further laboratory testing. (Exhibit 3 at page 23).

25.     On July 25, 2013, Plaintiff returned for a follow-up evaluation with Dr. Obaisi regarding throat and mouth pain. Dr. Obaisi performed a physical examination of Plaintiff, and prescribed him to Neurontin, a medication used to treat neuropathic pain. (Exhibit 3 at page 24).

26.     On August 30, 2013, Plaintiff presented for an evaluation with Dr. Davis in connection with complaints of chest pain and numbness in his left arm. After performing a physical examination, Dr. Davis diagnosed Plaintiff with gastritis. Dr. Davis prescribed Protonix and Milk of Magnesia, a medication used to treat constipation. (Exhibit 3 at pages 25-26).

27.     Plaintiff was seen by the Stateville medical staff on several occasions for medical conditions unrelated to the present matter during the time period of November of 2013 until he was transferred from Stateville on or about February 26, 2014. There is no indication Plaintiff complained of symptoms related to this lawsuit during that time period. (Exhibit 3 at pages 26-45).

28.     In this regard, on November 14, 2013, Plaintiff presented for an appointment with Dr. Obaisi. On this occasion, Plaintiff complained of dryness in his mouth and nasal cavity for the past year. Dr. Obaisi performed a physical examination of Plaintiff, and ordered him to undergo laboratory testing to determine the cause of Boyce's symptoms. In addition, Dr. Obaisi prescribed Plaintiff saline nasal spray. (Exhibit 3 at page 26).

29.     On November 28, 2013, Plaintiff was seen by a nurse at Stateville for back pain after an alleged altercation. Boyce did not make any complaints regarding the alleged stomach condition at issue in the above-caption case during this appointment. (Exhibit 3 at page 27).

30. From January 3, 2014 to January 9, 2014, Plaintiff was admitted to the Stateville infirmary after another alleged altercation. Plaintiff's medical complaints during his infirmary stay are unrelated to the above-captioned lawsuit. (Exhibit 3 at pages 28-39).

31. On January 24, 2014, Plaintiff was seen by a nurse in response to complaints of hip pain. Plaintiff did not make any complaints related to his alleged medical condition at issue in the above-captioned lawsuit on this occasion. (Exhibit 3 at page 40).

32. On January 25, 2014, Plaintiff had a follow-up visit with Dr. Davis regarding his January 3, 2014 injuries. Plaintiff did not make any complaints related to his alleged medical condition at issue in the above-captioned lawsuit on this occasion. (Exhibit 3 at pages 41-42).

33. On February 13, 2014, Plaintiff was seen by a nurse in response to complaints of hip pain. Plaintiff did not make any complaints related to his alleged medical condition at issue in the above-captioned lawsuit on this occasion. (Exhibit 3 at pages 43-44).

34. On February 20, 2014, Plaintiff was seen by a nurse in response to complaints of hip pain. Plaintiff did not make any complaints related to his alleged medical condition at issue in the above-captioned lawsuit on this occasion. (Exhibit 3 at page 45).

35. On February 26, 2014, Plaintiff was transferred from Stateville to Pontiac. (Exhibit 1 at 7:17-8:4; and Exhibit 3 at page 46).

36. The first occasion in which Plaintiff complained of abdominal discomfort while at Pontiac occurred on June 6, 2014. On this occasion, Boyce was evaluated by Nurse Practitioner, Louise Todd, N.P. ("Todd"), in connection with complaints of pain in his throat, gums, groin, stomach, and back. After performing a physical examination, Todd ordered laboratory testing, and prescribed Zantac, a medication that reduces the production of stomach acid in connection with relieving the symptoms of acid reflux. (Exhibit 3 at page 47).

37. On July 31, 2014, Plaintiff presented for an otolaryngology evaluation at University of Illinois at Chicago Medical Center ("UIC") at the direction and approval of Wexford. On this occasion, Boyce was examined by specialist, Judy Liu, M.D. ("Dr. Liu"). Dr Liu noted Plaintiff reported that he was currently prescribed to Zantac. Dr. Liu performed a flexible fibreoptic laryngoscopy, which involved placing a small camera down Plaintiff's throat in order to further diagnose Plaintiff's purported condition. After examining Plaintiff and performing the diagnostic procedure, Dr. Liu diagnosed Plaintiff with "Reflux." Dr. Liu's recommended treatment plan was for Boyce to continue to taking Zantac. Dr Liu did not make any recommendations for further diagnostic tests or further evaluation with her or any other specialists. (Exhibit 1 at 18:23-20:23, and Exhibit 3 at pages 48-50).

38. Plaintiff has received Zantac and Pepcid continuously subsequent to his July 31, 2014 evaluation at UIC. (Exhibit 1 at 18:8-19, and 20:6-14).

39. On April 29, 2015, Plaintiff presented to the Pontiac HCU with complaints of chin pain. At Boyce's request, the Physician's Assistant refilled his prescription for Zantac and Cepacol mouthwash. (Exhibit 3 at page 51).

40. On June 26, 2015, Plaintiff presented for an evaluation with Physicians' Assistant, James Caruso, PA-C ("Caruso"). After performing a physical examination of Plaintiff, Caruso increased the dosage of Boyce's prescription to Zantac. (Exhibit 3 at page 52).

41. On September 28, 2015, Plaintiff returned to the Pontiac HCU with complaints of stomach pain. Caruso noted that Plaintiff reported he had just eaten a hamburger and fries. (Exhibit 3 at page 53).

42. On October 2, 2015, Plaintiff again presented to the Pontiac HCU with complaints of epigastric pain. Caruso ordered an H. Pylori test, which was completed on October 14, 2015. (Exhibit 3 at pages 54-55).

43. On January 6, 2016, Plaintiff presented for physician's sick call in connection with complaints of intermittent abdominal cramps and diarrhea. After the treating physician performed a physical examination, Plaintiff was diagnosed with "irritable bowel." Boyce was prescribed Famotidine, a medication used to treat excessive stomach acid associated with GERD. (Exhibit 3 at page 56).

### *Plaintiff's Deposition Testimony*

44. Plaintiff testified that from April of 2011 to the present, he has been treated by physicians at Stateville and Pontiac on at least a dozen occasions in connection with complaints of stomach pain. (Exhibit 1 at 50:4-15).

45. Plaintiff testified that he has received laboratory testing and medications, including Bentyl, Zantac, Imodium, and Famotidine, during the relevant time period.

46. Plaintiff testified antacid medication is available at both the Stateville and Pontiac commissaries. (Exhibit 1 at 51:10-14).

47. Plaintiff testified that he frequently purchases and consumes spicy foods from the commissary during the relevant time period. (Exhibit 1 at 56:12-57:8).

### *Plaintiff's Failed Attempts to Exhaust His Administrative Remedies*

48. On March 31, 2011, Plaintiff sent a correspondence to the IDOC Administrative Review Board ("ARB") in which he made complaints regarding several medical conditions, including stomach cramps and diarrhea. Plaintiff does not reference any Offender's Grievance in this correspondence. (Exhibit 4 – March 31, 2011 correspondence to ARB and response).

49. On April 13, 2011, ARB Chairperson, Sarah Johnson, returned Plaintiff's correspondence and advised him he had failed to comply with IDOC rules because he did not provide a copy of the Offender's Grievance, or the Grievance Office and/or Warden's response to the Offender's Grievance with his appeal. (Exhibit 4).

50. On March 24, 2012, Plaintiff filed an Offender's Grievance (#940) as an emergency grievance. On March 29, 2012, the Warden of Stateville denied the grievance as an emergency. (Exhibit 5 – March 24, 2012 grievance documents).

51. On April 22, 2012, Plaintiff wrote a correspondence to the ARB in which he attempted to appeal the March 24, 2012 Offender's Grievance (#940). That correspondence did not enclose a copy of the March 24, 2012 Offender's Grievance (#940). (Exhibit 5).

52. On April 27, 2012, ARB Chairperson, Sarah Johnson, returned Plaintiff's correspondence and advised him he had failed to comply with IDOC rules because he did not provide a copy of the March 24, 2012 Offender's Grievance (#940) with his appeal. (Exhibit 5).

53. On June 3, 2014, Plaintiff filed an Offender's Grievance as an emergency grievance. On June 4, 2014, the Warden of Pontiac denied the grievance as an emergency. (Exhibit 6 – June 3, 2014 grievance documents).

54. On June 23, 2014, the Pontiac Grievance Officer issued Plaintiff a memorandum advising him that his complaint was outside the jurisdiction of the grievance procedures. (Exhibit 6).

55. On February 18, 2015, ARB Chairperson, T. Scott Keen, returned Plaintiff's correspondence and advised that the complaint was outside of the jurisdiction of the ARB. (Exhibit 6).

56. On January 7, 2015, Plaintiff filed an Offender's Grievance as an emergency grievance. On February 10, 2015, the Warden of Pontiac denied the grievance as an emergency. (Exhibit 7 – January 7, 2015 grievance documents).

57. On February 12, 2015, the Pontiac Grievance Officer issued Plaintiff a memorandum advising him to contact his counselor. (Exhibit 7).

58. On March 25, 2015, ARB Chairperson, T. Scott Keen, returned Plaintiff's correspondence and advised him he had failed to comply with IDOC rules because he did not provide a copy of the Offender's Grievance, or the Grievance Office and/or Warden's response to the Offender's Grievance with his appeal.

    Respectfully submitted,

    CASSIDAY SCHADE LLP

    By: /s/ *Joseph J. Lombardo*
        One of the Attorneys for Defendant,
        WEXFORD HEALTH SOURCES, INC.

Matthew H. Weller/ ARDC No. 6278685
Joseph J. Lombardo/ ARDC No. 6306466
CASSIDAY SCHADE LLP
20 North Wacker Drive, Suite 1000
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 – fax
mweller@cassiday.com
jlombardo@cassiday.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on January 12, 2017, I electronically filed the foregoing document with the clerk of the court for Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ *Joseph J. Lombardo*

8426985 JLOMBARD;JLOMBARD