# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| Anthony Boyce (R-52162), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 15 C 7580 |
| v. | ) | |
| | ) | Judge Amy J. St. Eve |
| | ) | |
| Wexford Health Sources, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Anthony Boyce, an Illinois prisoner, brought this action *pro se* pursuant to 42 U.S.C. § 1983, alleging that Wexford Health Sources, Inc., the entity tasked with providing medical care at Illinois prisons is responsible for purportedly deficient medical care he received for his acid reflux. Before the Court is Defendant's motion for summary judgment. For the reasons set forth below, the motion is granted in its entirety.

### SUMMARY JUDGMENT RECORD

### I.     Summary Judgment Briefing and Threshold Motions

In the operative second amended complaint (Dkt. 26), Plaintiff named as Defendants an Illinois Department of Corrections official, Terri Anderson, and Wexford Health Sources, Inc. ("Wexford"). (Dkt. 26.) The Court dismissed Defendant Anderson pursuant to settlement. (Dkt. 70.) Wexford, also referred to as "Defendant," has now moved for summary judgment on all claims against it (Dkt. 90), and filed a corresponding memorandum in support (Dkt. 91), Local Rule 56.1 Statement

of Undisputed Material Facts, with exhibits (Dkt. 92), and a Rule 56.2 Notice to Pro Se Litigant Opposing Motion for Summary Judgment (Dkt. 89).

In response, Boyce submitted a "notice of intent."[1] (Dkt. 105.) The notice of intent consists of multiple sub-parts: (1) a table of contents (Dkt. 105, pgs. 1-2); (2) a motion for sanctions against defense counsel and Wexford (*id*. at 3-5); (3) "pliffs reply to Def Wex undisputed facts" (*id*. at 6-11); (4) "pliff set of additional material genuine fact" (*id*. at 11); (5) "plaintiffs Anthony Boyce R-52162 Declaration in case 15 C 7580" (*id*. at 12-18); (6) "pliff reply to Defendant Wexford summary judgment motion" (*id*. at 19-25); (7) "pliff reply to Defendant Wexford memorandum for summary judgment motion" (*id*. at 26-40); and (8) exhibits (*id*. at 41-197).

Defendant submitted a reply in support of its summary judgment motion on March 10, 2017. (Dkt. 99.) Boyce separately moved "to clarify matters with the courts ingard [sic] to his summary judgment motion and sanctions motion," (Dkt. 97), and "to object and strike Def Reply." (Dkt. 101.) He also, without leave of Court, submitted "pliff response to Def Wex reply to summary judgment and objections." (Dkt. 103.) The Court will, to the extent consistent with the federal and local rules, consider Boyce's unsolicited "response to Def Wex reply."

Boyce's so-called motion to clarify (Dkt. 97) is administratively terminated, as it does not seek any specific relief; the Court will, however, consider the contents of that motion in construing Boyce's arguments in opposition to Defendant's motion for summary judgment. Boyce's motion to strike (Dkt. 101), in which he argues that Defendants "forfeited any reply" by failing to file it within two weeks of the docketing of Boyce's response, is denied. The Court did not, as Boyce argues, order

---

[1] This filing was originally docketed at No. 95, but, upon review, it was determined that the judge's copy contained additional exhibits that did not appear in the docketed version. Accordingly, the original entry was stricken (Dkt. 104), and the judge's copy of the "notice of intent" was scanned at Docket No. 105.

Defendant to submit a reply within two weeks of Plaintiff's response.[2] Instead, the Court ordered Defendant to reply by March 10, 2017. (Dkt. 94.) Defendant's reply (Dkt. 99), filed on that date, was, therefore, timely. The Court will address all other pending motions below.

## II.     Northern District of Illinois Local Rule 56.1

Local Rule 56.1 sets out a procedure for presenting facts pertinent to a party's request for summary judgment pursuant to Fed. R. Civ. P. 56. Specifically, Local Rule 56.1(a)(3) requires the moving party to submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law." *Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014). Each paragraph of the movant's statement of facts must include "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." L.R. 56.1(a). The opposing party must file a response to each numbered paragraph in the moving party's statement, "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(B). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." L.R. 56.1(b)(3)(C). The nonmoving party may also present a separate statement of additional facts "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(C).

---

[2] The Court also did not, as Boyce insists, order Defendant to "give Bates stamps on medical records," but, instead, to seek Bates-stamped grievance records from IDOC (Dkt. 75), and to provide Boyce with a file-stamped copy of the summary judgment materials so he would be able to reference the docket and page numbers. (Dkt. 88.)

"[A] district court is entitled to decide [a summary judgment] motion based on the factual record outlined in the [Local Rule 56.1] statements." *Koszola v. Bd. of Educ. of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (third alteration in original) (internal quotation marks omitted); *see also Olivet Baptist Church v. Church Mut. Ins. Co.*, --- Fed. Appx. ----, 2017 WL 129943, at *1 (7th Cir. Jan. 13, 2017) ("The district court treated most of the [defendant's] factual submissions as unopposed, because the [plaintiff] failed to contest them in the form required by Local Rule 56.1(b). We have held that the district court is entitled to enforce that rule in precisely the way it enforced the rule in this litigation.") (citations omitted); *Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). Boyce's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 Fed. Appx. 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules."); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow rules of civil procedure.").

Because Boyce is proceeding *pro se*, Defendant served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (Dkt. 89.) The notice explained how to respond to Defendant's summary judgment motion and Rule 56.1 Statement and cautioned Boyce that the Court would deem Defendant's factual contentions admitted if he failed to

follow the procedures delineated in Local Rule 56.1. (*Id.* at 1-3.) The Court notes, however, that Boyce is an experienced litigant, having brought at least nine other lawsuits here, *see Boyce v. Godinez*, No. 12 C 3840; *Boyce v. Carter*, No. 12 C 5372; *Boyce v. Gray*, No. 13 C 2967; *Boyce v. Obaisi*, No. 13 C 5746; *Boyce v. Martella*, 13 C 6526; *Boyce v. Johnson*, No. 13 C 6832; *Boyce v. Lemke*, No. 14 C 0108; *Boyce v. Obaisi*, No. 14 C 0418; and *Boyce v. Madigan*, No. 15 C 9268, some of which progressed to (or beyond) summary judgment. Boyce also filed two § 1983 actions in the Central District of Illinois, *Boyce v. Hale*, No. 1:14-cv-01199-JES; *Boyce v. Illinois Department of Corrections*, No. 1:16-cv-01028-SLD.

In his response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts, Plaintiff admits the facts contained within paragraphs 1-5, 6 ("admit[ting] those are some of the side effects of acid reflux"), 10, 37-38, 44, 46, 47 (part), and 48-58 (part). These facts are therefore accepted as true.

Boyce purports to deny, at least in part, the remainder of Defendants' uncontested facts. The Court will disregard conclusory denials, such as Plaintiff's unresponsive statements of "Dispute whether pliff had serious medical condition with his antiacid condition" and "pliff disputes and denies he was given in adequate care." (*See* Dkt. 105, pg. 8.) Such responses do not create material issue of disputed fact. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008); *see also Almy v. Kickert Sch. Bus Line, Inc.*, No. 08-cv-2902, 2013 WL 80367, at *2 (N.D. Ill. Jan. 7, 2013) ("[C]ourts are not required to 'wade through improper denials and legal arguments in search of a genuinely disputed fact.'") (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)).

As to the facts Boyce seeks to add to the record to defeat Defendant's motions, *see* Rule 56.1(b)(3)(C), he has not followed the Rule in several ways. First, he improperly inserted additional facts into his responses to Defendant's local Rule 56.1(a)(3) statement. (*See, e.g.*, Dkt. 105, pgs. 9-11, ¶¶ 11, 47, 48-58.) Second, Boyce submits additional facts through his legal briefs. But "facts submitted in a brief but not presented in a Local Rule 56.1 statement are disregarded in resolving a summary judgment motion." *Beard v. Don McCue Chevrolet, Inc.*, No. 09 C 4218, 2012 WL 2930121, at *5 (N.D. Ill. July 18, 2012). Third, Boyce's statements of additional facts do not in fact list additional undisputed facts, because they consist not of factual assertions but of a series of open-ended legal questions beginning with "whether," *e.g.*, "whether Def Wexford had a unconstitutional policy." (Dkt. 105, pg. 11.)

## III. Boyce's Objections to Defendant's Exhibits

Boyce's remaining denials consist chiefly of two objections to the Court relying upon Defendant's exhibits. First, as to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts ¶¶ 11-36, 39, 45, 48-58, he objects that Defendant did not submit an authenticating declaration in support of the attached exhibits.[3] (*See, e.g.,* Dkt. 105, pg. 9 ("Pliff objects and asks that it not be admitted due to the fact its no declaration in support.")). While a party may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2), Boyce does not suggest that the cited exhibits (most of which are the transcript from his deposition and medical records) "cannot be presented in a form that would be admissible in evidence." *See id*. Boyce, in fact, cites to his own deposition. (Dkt. 105, pg. 9 ¶ 11.) In

---

[3] The Court notes that, should the Court require this of the parties, Boyce's exhibits would not pass muster. Although Boyce declares that "[d]ocuments attached to said pleadings attached are true and in support of my case," this does not meet the authentication or foundational requirements of the Federal Rules of Evidence. *See* Fed. R. Evid. 803, 901, 902.

any case, "federal courts routinely consider unauthenticated documents on motions for summary judgment, for example, when it is apparent [] that such documents are capable of reduction to admissible, authenticated form." *Talley v. Triton Health Sys., LLC*, No. 2:14-CV-02325-RDP, 2016 WL 4615627, at *8 (N.D. Ala. Sept. 6, 2016); *see also Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014) (explaining that summary judgment materials may "be inadmissible at trial so long as *facts* therein could later be presented in an admissible form.") (citing Fed.R.Civ.P. 56(c)(2)-(4)). Medical records are "readily authenticated"; they are, moreover, "exceptions to the hearsay rule" and generally "admissible at trial." *Adams v. Harrington*, No. 3:14-CV-366-NJR-DGW, 2017 WL 347440, at *1 (S.D. Ill. Jan. 24, 2017) (citing Fed. R. Evid. 803); *Jones v. W. Tidwater Reg'l Jail*, No. 2:15CV316, 2016 WL 3647591, at *3 (E.D. Va. June 30, 2016) noting that rules no longer require records to be submitted in admissible form and that "medical records could be admissible" if accompanied by custodian's affidavit). Accordingly, Boyce's objection to Defendant's exhibits on the basis that Defendant did not submit a supporting declaration is overruled.

Second, as to portions of Defendant's Local Rule 56.1 Statement of Undisputed Material Facts ¶¶ 6-9, Boyce objects to Defendant's reliance upon the Declaration of Dr. Saleh Obaisi, M.D., which appears at Docket No. 92-2, in which Dr. Obaisi describes the occurrence of acid reflux, its risk factors, and general treatment options. In particular, although Boyce does not seem to disagree with the factual content of the declaration, Boyce objects that Dr. Obaisi "doesn't refer in it whom he is talking about," "doesn't reference where he diagnosed pliff," and "told pliff he was underqualified to give pliff the type of treatment . . . due to the fact it was outside his field of expertise." (Dkt. 105, pgs. 7-8.) Defendant counters that Dr. Obaisi's "general information and opinions regarding common and benign conditions" are within his qualifications, given that he has practiced medicine for over forty

years. (Dkt. 99, pg. 4.) It is unclear in what capacity Dr. Obaisi's testimony is being offered, but without ruling on the merits of Boyce's objection, the Court finds that it need not rely on Dr. Obaisi's declaration.

Boyce, through his motion for sanctions, raises one final challenge to the exhibits upon which Defendant relies: that his medical records were incomplete and "falsified." (Dkt. 105, pg. 3-4; see also Dkt. 105, pg. 15 ¶ 8.) He seeks not only to discredit the exhibits themselves but to level sanctions against defense counsel for attaching them despite Boyce's forewarning that he objects to the falsity of all medical records. (Dkt. 105, pg. 3-4) (Counsel "was warned by pliff on multiple times that medical records was false"; "it can be inferred that they tried to separate themselves from the medical records when they didn't file a sworn declaration to certain medical records.").

First, Boyce states that certain medical records, such as healthcare request slips, "medical copayments money voucher forms" are "missing" from the documents provided in Defendant's summary judgment materials. (Dkt. 105, pg. 15; Dkt. 101, pg. 1.) Boyce has not identified any missing healthcare request slips or the contents of any purportedly missing slips that are relevant here. As for the payment slips ("p 96" or "pliff ex 58, 60, 61, which the Court understands to refer to Dkt. 105, pgs. 183, 185, 186), they appear to be not "medical records" as Boyce labels them, but the "Illinois Department of Corrections Offender Authorization for Payment," *i.e.*, an IDOC record used to demonstrate an inmate's consent to remove funds for a medical co-pay. Defendant's failure to include those documents (which, as noted above, appear to be generated by another entity) with its summary judgment submissions does not demonstrate any misconduct by Defendant or its counsel, and Boyce has not identified any "missing" documentation (that he does not already possess) that is related to the treatment he received for the condition he identifies in this case.

8

Second, Boyce argues that "staff falsified his medical records" because they "intentionally lefted [sic] out some of his objective complaints." (Dkt. 97, pg. 1; *see also* Dkt. 105, pg. 15 ¶ 8.) He provides a single specific example to support this weighty charge: in one voucher authorizing IDOC officials to deduct a copay for treatment from his account, he listed multiple symptoms, which included "mice bites." (*Id.* at 1 (citing "p. 96" which appears to refer to Dkt. 105, at either pg. 185 or 186.)) According to Boyce, the medical notes from the related appointment, which he does not identify, do not mention "mice bites." (Dkt. 97, pg. 1.) The Court cannot, from this example, infer "falsification" of any record. Merely listing a symptom on an IDOC form authorizing payment for treatment does not establish that Boyce mentioned that symptom in the actual appointment; and, even if it could be inferred that he argues that he did, the omission of that symptom from the appointment notes does not suggest "falsification" of the existing appointment notes. The example he provided is irrelevant to the medical conditions he raises in this lawsuit, and he provides no other examples of omitted "objective complaints."[4] The Court, therefore, denies Plaintiff's motion for sanctions.

## IV.     Defendant's Objections to Boyce's Exhibits

The last hurdle to establishing the record for summary judgment purposes is resolving Defendant's objections to Boyce's exhibits. First, Defendant asks the Court to disregard Plaintiff's declaration as speculative, conclusory, self-serving, lacking in credibility, and relying upon hearsay. (Dkt. 99, pg. 4-6.) The Court declines to disregard Boyce's declaration in its entirety but will disregard

---

[4] Plaintiff also states that "entry date 1-3-16 medical records are falsified not writing down all pliff objective complaints," (Dkt. 105, pg. 15 ¶ 8), but he does not provide any description of what may have been missing from the entry he cites, "Def. ex 3 page  56." He seems to have thought it was Defendant's burden to "ask where when and how" the medical records "deviated from" Plaintiff's recollection. (Dkt. 105, pg. 15 ¶ 8.) But it is Boyce who challenges the records, so he carries the burden of identifying support for his position.

portions that are not within his personal knowledge, are unsupported by evidence in the record, or about which he could not permissibly testify.

Second, Defendant objects to the consideration of portions of an expert report (originally submitted in another case, *Lippert v. Ghosh*, Case No. 10 C 4603, at Dkt. 339 (which includes appendices not provide here)) (*see* Dkt. 105, pgs. 67-112) ("*Lippert* Report"), and a "Wexford rap sheet," whose origin is not well explained by Boyce,[5] but appears to be a collection of anecdotes from prisons around the country, compiled by a private organization called Private Corrections Working Group. (Dkt. 99, pg. 6-8.); *see* Private Corrections Working Group, Wexford Health Services Rap Sheet, *available at* https://www.privateci.org/rap_wexford.html (visited Apr. 11, 2017). Courts have routinely concluded that such items are inadmissible, at least when used to show the truth of the statements contained within them because they are classic hearsay. *See Mathis v. Carter*, No. 13 C 8024, 2017 WL 56631, at \*4-5 (N.D. Ill. Jan. 5, 2017) (holding that *Lippert* report did not meet hearsay exception for public records); *Diaz v. Chandler*, No. 14 C 50047, 2016 WL 1073103, at \*12 (N.D. Ill. Mar. 18, 2016) (declining to take judicial notice of *Lippert* report); *see also Daniel v. Cook County*, 833 F.3d 728, 743 (7th Cir. 2016) (holding that monitor report prepared by Dr. Shansky regarding Cook County Jail medical care was not admissible for truth of statements it contained; as report "was a communication crafted with care for the court and parties based on scheduled visits to the jail," "no evidence" suggested "that it was made at the time of Shansky's observations"); *see also Abascal v. Fleckenstein*, 820 F.3d 561, 563, 566-67 (2d Cir. 2016) (holding that prison monitoring report by "independent non-profit organization that advocates for a more humane and effective criminal justice system" did not fall within hearsay exception and that district court's admission of

---

[5] According to Boyce, "its called Wexford rapsheet its on the internet look it up" and contains "approx. 100 complaints about in inappropriate care this is serious [sic] of bad acts." (Dkt. 105, pg. 22.)

report was not harmless error). This Court agrees and finds that the report and rap sheet are inadmissible hearsay and thus will not admit them for the truth of the matters within them.

Defendants finally object to Boyce's reliance on a jury verdict against Defendant in another case. (Dkt. 99, pgs. 8-9.) Boyce states that "in fox civil suit they jury awarded money holding verdict wexford had unconstitutional policy." (Dkt. 105, pg. 39; Dkt. 105, pg. 16 ("in fox motion in my complaint, a family won in front of a jury in wexford having a unconstitutional policy.")) The Court understands Boyce to refer to a jury verdict rendered in *Fox v. Barnes*, No. 09 C 5453 (N.D. Ill.) (Holderman, J.) (Dkt. 446), to argue that Wexford was aware of a relevant unconstitutional policy as of that time. But Boyce's understanding of the verdict itself is flawed. Although the plaintiff in *Fox* argued prior to trial that Wexford lacked a policy governing the distribution of medications to inmates, which led to the inmate's injuries, *id.* at dkt. 220, pg. 14, Wexford (and all of its employees) were dismissed prior to trial. *Id.* at dkt. 220, pg. 14; Dkt. 400. The jury returned a verdict only against an individual Illinois Department of Corrections employee. *Id.* at dkt. 446. This verdict was against an individual who is neither a defendant here nor employed by this Defendant, so his individual conduct as to another inmate, has no conceivable relevance to this case. Therefore, the Court excludes this evidence.

## V. Composition of Factual Record

The Court will therefore draw the relevant facts from Defendants' Statement of Facts, where Boyce agreed with them or neither pointed to opposing factual evidence nor raised a meritorious evidentiary objection. Where Boyce has properly pointed to opposing facts in the record that suggest a factual dispute, the Court will include those facts. The Court also will, in general, incorporate Boyce's factual assertions to the extent they are relevant, are supported by record evidence, or are

such that Boyce properly could testify as to them at trial. The Court further will rely upon Boyce's references to exhibits where they are relevant to the Court's analysis and may be admissible at trial. The Court will not, however, dig through the record to identify disputed issues of fact. *See Hemsworth v. Quotesmith.com, Inc*., 476 F.3d 487, 490 (7th Cir. 2007) ("In considering a motion for summary judgment, the district court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies."). With the evidentiary disputes resolved and these guidelines established, the Court turns to the facts of this case.

### FACTS

Plaintiff Anthony Boyce is an Illinois prisoner serving a life sentence. (Dkt. 92, DSOF ¶ 1.) He was housed at Stateville Correctional Center, until he was transferred to Pontiac Correctional Center on or about February 26, 2014. (DSOF ¶¶ 3, 35.) Boyce's medical training is limited to knowledge "not beyond a lay person's grasp," and "personal knowledge and experience with [him]self," "like, if your head hurt, you know your head hurt." (Dkt. 92-1, pg. 7, at 33:15-34:11.)[6] Defendant Wexford Health Sources, Inc., is a private corporation that has contracted with the Illinois Department of Corrections to provide medical services at correctional facilities, including Stateville and Pontiac Correctional Centers. (DSOF ¶ 2.)

The parties agree that Boyce, who has brought lawsuits related to treatment for other alleged medical conditions, here challenges the treatment he has received for acid reflux, also known as

---

[6] The entire exchange is as follows: "Q. Do you have any specialized training? [] A. I have – you know, sometimes – yes, I have training. When it comes to me, I know my body. Just like if your head hurt, you know your head hurt. It's like this. Sometimes the doctors, only thing – only indication is the patient's objective complaints. Q. Mr. Boyce, do you have any specialized medical training? A. I have training with myself, yes. I have training with myself. I know if something hurting on me, yes. Q. Okay. Have you ever taken any classes regarding training in medicine? A. Certain things, just a lay person, you don't even – it's not beyond a lay person's grasp, Mr. Lombardo. It's obvious. Just like you – Q. Just answer the question, Mr. Boyce. A. Yes, I got personal knowledge and experience with myself, yes. Q. But that's not the question."

gastroesophageal reflux disease (GERD). (DSOF ¶ 5.) "[GERD] is a condition in which [] backflow of acid [into the esophagus] is a frequent or ongoing problem," and may cause "persistent, agonizing pain and discomfort," as well as potentially serious complications, such as "esophagitis," narrowing or stricture of the esophagus from chronic scarring, or "Barrett's esophagus." *Rowe v. Gibson*, 798 F.3d 622, 623 (7th Cir. 2015) (alteration in original) (citations and quotation marks omitted). "'The foods you eat affect the amount of acid your stomach produces' and 'many people with GERD find that certain food trigger their symptoms.'" *Id*. (citation omitted).

## I.    Medical Treatment at Stateville Correctional Center

Boyce states that his GERD symptoms began in 2008, but facility medical records reflect that Boyce first complained of abdominal discomfort to a physicians' assistant (P.A.) at Stateville on April 11, 2011. (DSOF ¶ 10, 11-28.)[7] He complained that the drinking water caused him diarrhea, "tummy cramping," weight loss, and dehydration. (DSOF ¶ 10.) The P.A. prescribed him Imodium, an anti-diarrheal medication, and ordered laboratory testing, including a test for H. Pylori, (*id*.), the results of which do not appear in the record.

On August 18, 2011, Boyce returned to the P.A. complaining of diarrhea, intermittent stomach cramping, and "face bumps" he suspected signaled potential "oral cancer." (*Id*. ¶ 11.) Her notes reflect that Boyce reported that the Imodium had helped his stomach (*Id*. ¶ 11), but Boyce denies this, citing deposition testimony in which he concedes that the medication did "stop[] [him] from defecating on [him]self." (Dkt. 105, pg. 9 ¶ 11 (citing Dkt. 92-1, pg. 13, at Dep. pgs. 48-49.) He insists that he

---

[7] Boyce also attributed his symptoms to having ingested prescribed "AIDS and HIV medications" in 2007 after an inmate bit him, which he believes may have caused his later stomach discomfort. (Dkt. 92-1, pg. 8, at Dep pg. 28:6-10: "Q. … So you're not alleging that this HIV/AIDS medication caused you to have stomach problems? A. Yes, it did. It's a strong possibility. It's very likelihood.") He brought a claim in the Illinois Court of Claims regarding the prescription for those medications, but the claim was dismissed without Boyce "get[ting] a dime off the case." (Dkt. 92-1, pg. 8, at Dep. pg. 26:5-24.)

nevertheless told the P.A. that it "didn't work" in an unspecified way. (*Id.*) Although Boyce's physical examination did not reveal abnormalities, the P.A. ordered laboratory testing, including a test for H. Pylori, classified his symptoms as irritable bowel syndrome (IBS), and refilled Boyce's prescription for Imodium. (DSOF ¶ 11.) Her plan stated "pt advised to keep food diary." (Dkt. 92-3, at 2.) The P.A. reviewed Boyce's chart again on September 20, 2011, when he complained of abdominal issues, and she ordered testing. (DSOF ¶ 12.) The resulting laboratory tests did not reveal abnormalities. (*Id.* ¶¶ 11, 13.)

At Boyce's follow-up appointment on September 28, 2011, when Boyce reported abdominal discomfort that was alleviated by the medication he had been prescribed, the P.A. noted "probable" IBS and prescribed Bentyl, a medication to treat stomach and intestinal cramping, along with noting that she discussed "dietary issues" with Boyce. (*Id.* ¶ 14; Dkt. 92-3, pg. 6.) At Boyce's next appointment on November 22, 2011 (at which he raised a number of issues), the P.A. refilled Boyce's prescription to Bentyl, when he reported that his "medication was helpful." (DSOF ¶ 15; Dkt. 92-3, pg. 12.)

On January 17, 2012, Stateville's former medical director, Imhotep Carter, M.D., examined Boyce. (DSOF ¶ 16.) The doctor noted a "long somatic complaints list," which included abdominal pain that was better with Bentyl, "pain in [his] gums," medications "mak[ing his] vision bad," and "bad" water. (*Id.*; Dkt. 92-3, pg. 13.) Dr. Carter noted that Boyce's weight was "unchanged from 2010," an ENT exam was "normal," "abd soft" and "non-tender," and observed "no evidence of GI disorder" at that time. (DSOF ¶ 16; Dkt. 92-3, pg. 13-14.)

On April 2, 2012, Boyce reported for nurse sick call, complaining of a burning pain in his chest; the nurse prescribed antacids and scheduled him for follow-up. (DSOF ¶ 17.) Accordingly, on

14

April 6, 2012, he followed up with a P.A., stating that the burning feeling began after "an electrical fire in [his] cell for 21 days, back in February." (DSOF ¶¶ 17, 18; Dkt. 92-3, pg. 16.)[8] Boyce also complained of abdominal cramps, and the P.A. refilled his Bentyl prescription. (DSOF ¶ 18.) At Boyce's request, the P.A. refilled the prescription again on August 10, 2012, and March 19, 2013. (*Id.* ¶¶ 19-20.) In June, in three appointments, Boyce saw the P.A., Dr. Ann Davis, and Dr. Obaisi after he complained of pain in his tonsils, throat, mouth, and gums, which he attributed to a dentist using unsterilized equipment in 2008.[9] (*Id.* ¶¶ 21-22.) Dr. Davis ordered laboratory testing, and Dr. Obaisi then prescribed him Protonix, a medication to treat reflux disease, and ordered laboratory testing. (*Id.* ¶¶ 23-24.) On July 25, 2013, at a follow-up appointment, Dr. Obaisi prescribed Neurontin to treat neuropathic pain. (*Id.* ¶ 25.) On August 30, 2013, when Boyce complained to Dr. Davis of chest pain and numbness in his left arm, she diagnosed him with gastritis, and prescribed Protonix and Milk of Magnesia, a medication to treat constipation. (*Id.* ¶ 26.)

Although medical personnel examined Boyce at least seven times between that date and his transfer to Pontiac in February 2014, the medical records do not reflect any further complaints regarding stomach discomfort. (*Id.* ¶¶ 27-35.) The transfer summary indicates that Boyce was prescribed Protonix at the time of the transfer. (Dkt. 92-3, pg. 46.)

---

[8] Boyce already brought a lawsuit in which he challenged the treatment for this alleged burning in his chest. *See Boyce v. Johnson*, No. 13 C 6832, 2015 WL 7351679, at *9 (N.D. Ill. Nov. 20, 2015) (granting motion for summary judgment regarding whether medical personnel were deliberately indifferent to these symptoms). He blames the differing testimony on "memory loss," which explains "why in prior depositions [he] didn't say some of the things in this, and also [he] was confused" without his notes at prior times. (Dkt. 92-1, pg. 7, at 25:7-8.)

[9] Boyce already brought a lawsuit challenging dental care at Stateville, which included allegations about the purported use of unsterilized dental equipment in 2008. *See Boyce v. Carter*, No. 12 C 5372, 2014 WL 4436384, at *1 (N.D. Ill. Sept. 8, 2014) (concluding that three Wexford doctors were entitled to summary judgment on a variety of dental deliberate indifference claims).

## II.     Medical Treatment at Pontiac Correctional Center

On June 6, 2014, a nurse practitioner (N.P.) evaluated Boyce regarding his complaints of pain in his throat, gums, groin, stomach, and back. (DSOF ¶ 36.) The N.P. ordered laboratory testing and prescribed Zantac, a medication to reduce the production of stomach acid. (*Id.*) On July 31, 2014, Boyce saw Dr. Judy Liu, M.D., an otolaryngologist at University of Illinois Medical Center, in response to his complaints of neck and throat pain. (*Id.* ¶ 37.) She noted that his "burning sensation in throat" had not improved, despite "ranitidine 150 mg BID x 1 year." (*Id.*; Dkt. 92-3, pg. 48.) Dr. Liu performed a flexible fibreoptic laryngoscopy, in which she threaded a small camera down Boyce's throat. (DSOF ¶ 37.) Her diagnosis included "Reflux," and she recommended that he continue to take Zantac. (*Id.*) She neither recommended further GERD-related testing, nor a referral to another specialist. (*Id.*) Boyce has received both Zantac and Pepcid since the laryngoscopy; a P.A. increased his Zantac dosage on June 26, 2015. (*Id.* ¶¶ 38-40.) On September 28, 2015, Boyce saw a P.A. regarding stomach pain, after having eaten a hamburger and fries. (*Id.* ¶ 41.) On October 2, 2015, when Boyce complained of epigastric pain, the P.A. ordered another H. Pylori test. (*Id.* ¶ 42.) On January 6, 2016, a doctor treated Boyce for complaints of intermittent abdominal cramps and diarrhea, and he was diagnosed with irritable bowel syndrome (IBS), for which he was prescribed Famotidine, a medication used to treat excessive stomach acid associated with GERD. (*Id.* ¶ 43.)

Throughout this time, Boyce has supplemented his prison meals with spicy foods from the commissary, although he denies that his consumption of spicy foods is "frequent." (*Id.* ¶ 47; Dkt. 105, pg. 10, ¶ 47 ("admit[ting that Boyce] at [sic] spicy foods" but "den[ying] he frequently eats spicy foods").) Boyce denies having consumed alcohol.[10]

---

[10] Boyce received a disciplinary ticket for possession of homemade alcohol, but testified that "he never got a chance to even drink the alcohol" prior to its confiscation. (Dkt. 92-1, pg. 15, Dep. pg. 56:2-11.)

### III. Boyce's Additional Factual Allegations

Although Boyce's original complaint raised numerous unrelated issues and included multiple additional Defendants, including medical personnel, (Dkt. 1), Boyce limited his second amended complaint to Terri Anderson and Wexford Health Sources, Inc., challenging the treatment for his "stomach issues." (Dkt. 26.) He argues that the treatment he received was deficient in several ways: (1) "[a]ll Defendant Wexford Health Sources and all medical staff at Pontiac, Stateville denied me access to a special diet trays" due to cost; (2) he "was refused diapers while he defecated on himself"; and (3) he "was denied access to outside specialist stomach doctor," such as a gastroenterologist, who he believes "could advised of treatment plan medication and foods to consume." (Dkt. 105, pgs. 13, 18, 28 30.) According to Boyce, the lack of a referral to a "stomach doctor" was significant because, "while at Pontiac, Stateville C.C. every medical staff member," told him that "pliffs medical condition was outside of their level of expertise due to the fact medical staff wasn't gastroenterologist." (Dkt. 105, pg. 12.) Boyce asserts that even the outside UIC otolaryngologist who confirmed his acid reflux diagnosis confessed "that she wasn't qualified to fully treat pliff due to the fact she wasn't a stomach doctor" and it "was outside her level of expertise" to "st[i]ck" the camera she used to view his esophagus "down [Boyce's] stomach." (Dkt. 105, pgs. 14, 30.)

Boyce included "a copy of the contract pages of Wexford Def has with the state notifying employees to not send out patients unless its in the tertery [sic] stage means like third basical [sic] final staged before a patient can be seen at outside hospital and that only a certain amount can be sent out." (Dkt. 105, pg. 13, ¶ 5 (citing to "pliff ex I, J. K, L, M.)) The relevant language appears to permit Defendant to "refer offenders" at some correctional centers, including Stateville and Pontiac, "without prior approval" to "University of Illinois d/b/a University of Illinois Medical Center at Chicago

(UIMCC)," although "[t]he number of referrals per contractual year from all of the specified Centers to the UIMCC shall not exceed 216 inpatient admissions and 2,160 outpatient visits per year unless approved in advance by UIMCC and the IDOC Medical Director," and "[c]ases referred to the UIMCC should be those requiring tertiary care." (Dkt. 105, pg. 115.)

## IV. Exhaustion of Available Administrative Remedies

Boyce submitted several communications, in the form of grievances and other correspondence, to IDOC officials complaining about his stomach issues. (DSOF ¶¶ 48-58.) In each instance, the Administrative Review Board returned related communications without a merits determination, citing Boyce's failure to include a copy of the grievance, response, or other related paperwork, or a lack of jurisdiction over the issue raised. (DSOF ¶¶ 49, 52, 54, 55, 58.)

Defendant has moved for summary judgment in its favor and against Boyce. (Dkt. 90.) As explained above, Defendant's motion is now more-than fully briefed.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). When addressing a motion for summary judgment, this Court construes the facts and makes all reasonable inferences in favor of the non-movant. *Id.* The Court's role is "to determine whether there is a genuine issue for trial," *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (citations and quotations marks omitted), without "weigh[ing] evidence, mak[ing] credibility determinations, resolv[ing] factual disputes and swearing contests, or decid[ing] which inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

18

After a properly supported motion for summary judgment is made, the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986). Although a Court considers facts and reasonable inferences in the light most favorable to the non-moving party, *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014), the non-movant must show more than disputed facts to defeat summary judgment—disputed facts must be both genuine and material. *Scott v. Harris*, 550 U.S. 372, 380 (2007). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). Moreover, evidence submitted in opposition to summary judgment must be admissible at trial under the Federal Rules of Evidence, although attested testimony, such as that found in depositions or affidavits, also may be considered. *Scott v. Edinburg*, 346 F.3d 752, 759-60 & n.7 (7th Cir. 2003); Fed. R. Civ. P. 56(c).

Invoking this standard, Defendant argues that it is entitled to summary judgment. Defendant argues that summary judgment in its favor is appropriate, first, because Boyce failed to exhaust administrative remedies regarding his claim that it was deliberately indifferent to his medical needs, and, second, because Boyce has not shown any constitutionally deficient care, much less that such deficiency was due to a Wexford policy or practice.

## I. Exhaustion of Available Administrative Remedies

Defendant argues that Boyce failed to exhaust his available administrative remedies, as required by the Prison Litigation Reform Act (PLRA), prior to bringing this lawsuit, in that "he did

not receive a final determination from the ARB regarding his grievances prior to filing the present lawsuit." (Dkt. 91, pgs. 6-7); *see* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 87, 90 (2006) (citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Boyce insists, with little elaboration until his "response to Wex reply," that he exhausted all available administrative remedies. (Dkt. 105, pg. 18, ¶ 12; Dkt. 105, pgs. 20, 32; Dkt. 103, pgs. 4-5.)

Failure to exhaust is an administrative defense that Defendants must plead and prove. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). "A prisoner must comply with the specific procedures and deadlines established by the prison's policy." *King v. McCarthy*, 781 F.3d 889, 893 (7th Cir. 2015). The specifics of applicable available administrative remedies are set forth in Illinois' Administrative Code. 20 Ill. Admin. Code § 504.800, et seq.; *see also Roberts v. Neal*, 745 F.3d 232, 235 (7th Cir. 2014); *Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011). As is relevant here, when an inmate believes he is raising an emergency issue, he may bypass the usual procedures and submit his grievance directly to the Chief Administrative Officer ("CAO"). 20 Ill. Admin. Code § 504.840; *Roberts*, 745 F.3d at 236. If the CAO agrees that the grievance involves an emergency, i.e., an issue presenting "a substantial risk of serious personal injury or other serious irreparable harm to the offender," the grievance handling is expedited. 20 Ill. Admin. Code § 504.840. If the CAO finds that the grievance does not present an emergency, a prisoner may appeal that rejection to the Administrative Review Board ("ARB"). *See Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005); *see also* 20 Ill. Admin. Code § 540.840.

Here, Defendant acknowledges that Boyce submitted several potentially relevant grievances and communications prior to filing this lawsuit. (DSOF ¶¶ 48-58.) Defendants contend that Boyce did not "properly appeal" the responses to those communications because the ARB responded only

by requesting additional documentation or disclaiming jurisdiction, rather than reaching the substance of Boyce's complaints. (Dkt. 91, pgs. 6-7; DSOF ¶¶ 48-55.) Defendant, for example, identifies a grievance dated January 7, 2015 (Dkt. 92-7), which Boyce marked as an emergency. The CAO declined to deem it an emergency. (Dkt. 92-7, pg. 1.) Boyce sent a copy of the grievance, including the warden's denial, to the ARB. (*See id.*, pgs. 1-2, stamped "Received Feb 26 2015 Administrative Review Board"). The ARB returned Boyce's appeal, directing Boyce to "[p]rovide a copy of your written Offender's Grievance, DOC 0046, including the counselor's response, if applicable," as well as "a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal." (Dkt. 92-7, pg. 4.) Boyce asserts that he did exhaust administrative remedies, and that, in any case, the Seventh Circuit has held that "you don't need a final determination for a grievance now." (Dkt. 105, pgs. 20, 32 (citing "*Boyce v. Illinois*, 2016 WL 4994574").)

Boyce overstates the Seventh Circuit's holding. Although the Seventh Circuit reiterated that "the Illinois Code" as yet "contains no obvious requirement that a prisoner resubmit a rejected emergency grievance that the warden did not hand off to a grievance officer," the Court nowhere suggested that a "final determination" (consistent with the Illinois Code) is no longer required. *Boyce v. Ill. Dep't of Corrs.*, 661 Fed. App'x 441, 443 (7th Cir. 2016) ("express[ing] no opinion on whether . . . [Boyce] did, in fact, exhaust available remedies"). The Court cannot, however, from the provided record, determine that Boyce did not exhaust—*i.e.*, that he did not submit all required documentation to the ARB as to any relevant grievance. As to the grievance appeal detailed above, for example, it is unclear what Boyce did not provide that IDOC officials said he should have (unless they continue to insist that Boyce needed to begin the grievance process anew in a manner not set forth in the

Administrative Code). *See Thornton*, 428 F.3d at 694 ("There is nothing in the current regulatory text, however, that requires an inmate to file a new grievance after learning only that it will not be considered on an emergency basis."). Accordingly, Defendant's motion is denied to the extent it is based on a failure to exhaust available administrative remedies.

## II. *Monell* Claim Against Defendant Based on Alleged Deliberate Indifference to Boyce's Serious Medical Needs

Defendant argues that Boyce has not shown deliberate indifference to his serious medical needs because the overall treatment provided to him for his GERD "was not outside the ordinary standard of care, much less a substantial departure therefrom." (Dkt. 91, pgs. 7-13.) It also argues that Boyce "cannot show that his alleged injury was the result of [Defendant's] official policy or widespread practice." (*Id*. at 14-16.)

Section 1983 bars *respondeat superior* liability as to local governmental units, so "[m]ost inmates who believe their right to health care has been violated [] seek damages from individual doctors or other health care professionals, or from correctional staff who might have ignored or interfered with the inmates' efforts to seek the health care they need." *Daniel*, 833 F.3d at 733 (citations omitted). Boyce, who originally (and typically has in similar lawsuits) named individual medical professionals as Defendants, eschewed doing so in the second amended complaint in this case, naming only Wexford Health Sources, Inc., and a now dismissed correctional official as Defendants.

A private corporation that has contracted to provide essential government services, such as healthcare for state inmates, may be liable under § 1983 if a violation of an inmate's constitutional violation during the provision of such services was caused by an unconstitutional policy, custom, or practice of the corporation itself. *See id.* at 733-34; *Shields v. Ill. Dep't of Corrs.*, 746 F.3d 782, 789

(7th Cir. 2014); *see also Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978). Boyce must show that policymakers were aware of the risk created by the custom, policy or practice and failed to take appropriate steps to protect him. *Thomas v. Cook County Sheriff's Dep't.*, 604 F.3d 293, 303 (7th Cir. 2010).

### A. Deliberate Indifference

The Court begins by examining whether Boyce has shown a question of fact as to whether his medical care was constitutionally deficient. Construed generously, Boyce seems to argue that Defendant's medical professional staff were, as a whole, deliberately indifferent to his serious medical needs and that the deliberate indifference stemmed from a policy, custom or practice of Defendant. "A prison official may be found in violation of an inmate's Eighth Amendment right to be free from cruel and unusual punishment if she acts (or fails to act) with 'deliberate indifference to [the inmate's] serious medical needs.'" *Conley v. Birch*, 796 F.3d 742, 746 (7th Cir. 2015) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *see also Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016) (en banc). Deliberate indifference claims contain both an objective and a subjective component: the inmate must have an objectively serious medical condition and the defendant must be subjectively aware of and consciously disregard the inmate's serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

### i. Objective Element—Serious Medical Condition

The parties agree that the medical condition at issue here is GERD, (DSOF ¶ 5), and that GERD may qualify as a serious medical need. (*See* Dkt. 91, pg. 7.) Accordingly, the Court assumes, without deciding, that Boyce's GERD qualifies as a serious medical condition.

### ii. Subjective Element—Deliberate Indifference

For this element, Boyce must show that medical personnel acted with deliberate indifference to his serious medical needs stemming from GERD. *Estelle*, 429 U.S. at 105. Deliberate indifference is comparable to criminal recklessness. *Farmer*, 511 U.S. at 837. The official accordingly must both "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* "The requirement of subjective awareness stems from the Eighth Amendment's prohibition of cruel and unusual punishment; 'an inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain."''" *Zaya v. Sood*, 836 F.3d 800, 804-05 (7th Cir. 2016) (emphases in original) (quoting *Estelle*, 429 U.S. at 105).

Claims of negligence (even gross negligence), medical malpractice, or a patient's disagreement with a prescribed course of treatment are insufficient to meet this standard. *See, e.g., Cesal v. Moats*, 851 F.3d 714, 724 (7th Cir. 2017) ("Deliberate indifference requires more than evidence of negligence or medical malpractice.") (citations omitted); *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012); *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012); *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Similarly, "[a] prison's medical staff that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not by its refusal violate the Constitution." *Gutierrez v. Peters,* 111 F.3d 1364, 1372 (7th Cir. 1997) (internal quotations omitted). Inmates "are not entitled to receive 'unqualified access to healthcare.'" *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) (quoting *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)). "To survive summary judgment," an inmate "need[s] to present evidence

sufficient to show that [a medical professional's] decision was 'so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.'" *Whiting v. Wexford Health Sources, Inc*., 839 F.3d 658, 664 (7th Cir. 2016) (citation omitted).

As to the subjective element, Boyce challenges not an individual medical professional's treatment of his condition (he need not prove individual liability, *see id.* at 664 (citation omitted)), but the overall care he has received. He insists that Defendant's deliberate indifference was demonstrated in that "every" medical professional he saw: (1) refused to provide him with diapers or "special diet trays"; and (2) disparaged his or her own ability to treat Boyce's condition but did not send him to a gastroenterologist.

Boyce's first claim, that all medical professionals refused to provide him with diapers (Dkt. 105, pg. 13 ¶ 4), is perplexing. Boyce, after all, admits he received medication that was effective at stopping him from "defecating on [him]self," (Dkt. 105, pg. 9 ¶ 11 (citing Dkt. 92-1, pg. 13, at Dep. pgs. 48-49.)) He identifies no specific request for "diapers" addressed to any individual, and the medical records do not reflect any, much less ongoing and repeated, requests for "diapers" to address a symptom he admits had resolved. Similarly, as to diet, Boyce was counseled regarding "dietary issues" and the need to keep a food diary when he started reporting symptoms that might have been related to the foods he consumed. (Dkt. 92-3, at 2, 6.) The record does not reflect that he kept a diary or made any other effort to identify the foods that aggravated his varying alleged symptoms. Instead, he possessed homemade liquor (although "[b]y the grace of God, [he] never got a chance to even drink [it]") (Dkt. 92-1, pg. 15, Dep. pg. 56:2-11), and continues to buy and consume even spicy foods from the commissary. (Dkt. 105, pg. 10 ¶ 47.) He has not provided any information regarding what foods could be placed on any "special diet tray" to alleviate his symptoms. On this record, Boyce has

not demonstrated any deliberate indifference from medical personnel refusing to order him "diapers" or special food trays.

Boyce second assertion is that Defendants should have sent him to a specialist (and, in particular, a gastroenterologist) because Boyce asserts that the run-of-the-mill medical personnel at both correctional centers were (he insists by their own admissions) unable to correct his GERD-related pain and symptoms. *See Rowe*, 798 F.3d at 627 (emphasizing that testimony of expert submitted to establish proper timing for taking prescribed Zantac was "not a gastroenterologist"). Indeed, it took medical personnel some time to light upon a consistent diagnosis for Boyce's condition (they suspected at least IBS, H. Pylori, and reflux)—but they ordered lab tests, tried different medications for his variously- and sometimes contradictorily-described symptoms, and repeatedly refilled his prescriptions after he professed at multiple appointments that they helped. (DSOF ¶¶ 10-20, 23-26, 36-40, 42, 43); *see Verser v. Ghosh*, 925 F. Supp. 2d 1028, 1033-34 (N.D. Ill. 2013) (holding that plaintiff did not show deliberate indifference through doctor's failure to prescribe medications stronger than antacids at the onset of his reflux symptoms, where doctor altered course when it became clear that antacids were ineffective and referred plaintiff to specialists and then approved recommended tests). They also prescribed medications to treat the potential side effects of long-term GERD, *see id*. at 623 (listing esophagitis, narrowing or stricture of esophagus from chronic scarring, and "Barrett's esophagus" as potentially serious complications of GERD), both before and after Boyce's transfer to Pontiac. (DSOF ¶¶ 26, 36-40.)

Further, he was, after complaints of throat discomfort, sent to an expert quite suited to diagnose and address any other such esophageal complications of GERD—an otolaryngologist—who performed a flexible fiberoptic laryngoscopy and reaffirmed the diagnosis, dosage and prescription

Boyce was already taking to address his GERD. (DSOF ¶ 37); *see DeJesus v. Albright*, No. 08 Civ. 5804(DLC), 2011 WL 814838, at *1 (S.D.N.Y. Mar. 9, 2011) (noting that plaintiff saw "otolaryngologist (an ear, nose and throat specialist)" after complaining of throat pain, and "was prescribed medication for acid reflux"). When he later complained of pain, his dosage was increased. (DSOF ¶ 40.)

Nor, despite Boyce's protestations regarding the otolaryngologist's alleged statement that "she wasn't a stomach specialist" (Dkt. 105, pg 33),[11] does his discontent with the particular type of specialist he saw, (*see* Dkt. 105, pg. 33 (seeking to distinguish *Verser*, 925 F. Supp. 2d 1028)), establish deliberate indifference under these circumstances. *See Lor v. Kelley*, 436 Fed. Appx. 634, 637 (7th Cir. 2011) (noting that, during relevant time frame, doctor "prescribed and adjusted [plaintiff's] antibiotics (from Doxycycline to Bactrim to Rocephin), performed relevant examinations and laboratory tests (e.g., rectal and prostate examinations, kidney and bladder ultrasounds, thyroid tests, lipid panel, urine and blood chemistry, hematology test, hemoccult test for blood in the stool, and urinalysis) and sought outside advice about a specialist referral from the Medical Review Committee" and then followed its advice regarding treatment plan, from which "[n]o juror could infer deliberate indifference"). There is no evidentiary support in this record to suggest that the choice to send Boyce to an otolaryngologist, rather than a gastroenterologist, for his GERD was "blatantly inappropriate." *See Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2011) ("Like other medical decisions, the choice whether to refer a prisoner to a specialist involves the exercise of medical discretion, [], and so refusal to refer supports a claim of deliberate indifference only if that choice is 'blatantly inappropriate.'") (citation omitted). Boyce is not, after all, entitled to dictate his medical treatment.

---

[11] The otolaryngologist, tellingly, did not recommend that Boyce be referred to a "stomach specialist" for further GERD-related treatment, despite allegedly informing Boyce of her own purported limitations. (DSOF ¶ 37.)

*Arnett*, 658 F.3d at 754. ("[A]n inmate is not entitled to demand specific care and is not entitled to the best care possible" but to "reasonable measures to meet a substantial risk of serious harm."); *Jackson v. Kotter*, 541 F.3d 688, 697–98 (7th Cir. 2008) (explaining that Eighth Amendment does not give inmates right to dictate course of treatment).

Boyce characterizes Defendant's argument—that his "cost-cutting policy" theory lacks force because he was, in fact, sent to an expert otolaryngologist—as "a bogus excuse" and for an "unrelated issue." (Dkt. 105, pg. 24.) The Court disagrees. As Defendant notes, Boyce was sent to a specialist for symptoms related to the very condition at issue in this case—GERD. The specialist confirmed his GERD diagnosis. (Dkt. 105, pg. 30 (confirming that otolaryngologist "saw acid in my throat")). This specialist visit was scheduled in spite of any cost concerns, and Boyce has not identified any difference in cost (as opposed to medical judgment) that might be at the root of an otolaryngologist being chosen over a gastroenterologist. Without more, Boyce has not established the existence of a cost-cutting policy that was the basis for him not being sent to a gastroenterologist.

**B.     Official Policy, Widespread Custom, or Action by Official with Policy-Making Authority as "Moving Force" Behind Any Alleged Lapses in Care**

Even had Boyce established deliberate indifference to a serious medical need stemming from GERD, "[t]o hold defendants liable under § 1983 and *Monell*, [a plaintiff] must demonstrate that the defendants' 'official policy, widespread custom, or action by an official with policy-making authority was the "moving force" behind his constitutional injury.'" *Daniel*, 833 F.3d at 734 (quoting *Dixon v. County of Cook*, 819 F.3d 343, 348 (7th Cir. 2016)). Not only overt policies, but also "implicit policies as well as a gap in expressed policies," may be sufficient. *Daniel*, 833 F.3d at 734. Defendant argues that Boyce has failed to meet this requirement. (Dkt. 91, pgs. 14-16.) The Court agrees.

Boyce may prove an unlawful custom or widespread policy by demonstrating that the challenged practice "'was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision.'" *Dixon*, 604 F.3d at 348 (quoting *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006). He "can meet this burden by offering 'competent evidence tending to show a general pattern of repeated behavior (i.e., something greater than a mere isolated event).'" *Daniel*, 833 F.3d at 734 (quoting *Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006)). Thus, he is required to "show more than the deficiencies specific to his own experience" but instead bring forth "evidence that could allow a reasonable trier of fact to find . . . 'systemic and gross deficiencies in staffing, facilities, equipment, or procedures in a detention center's medical system," of which the policy maker or official was aware but failed to correct. *Id.* at 734-35 (citations omitted). He then must "show that a policymaker or official knew about these deficiencies and failed to correct them." *Id*. at 735.

Boyce points to several potential Wexford policies or widespread practices he says led to allegedly unconstitutional treatment for his GERD: (1) the Court may infer from the *Fox* verdict, the *Lippert* Report, and "Wexford rap sheet" that Defendant "has a unconstitutional policy to provide ineffective treatment this was the moving force" underlying the alleged deficiencies in his care (Dkt. 105, pg. 30); (2) Defendant's IDOC contract evidences a policy "to not send out patients unless its in the tertery [sic] stage means like third basical [sic] final staged before a patient can be seen at outside hospital and that only a certain amount can be sent out" (Dkt. 105, pg. 13, ¶ 5); and (3) a general cost-cutting policy. (Dkt. 105, pg. 30 (stating that unspecified staff members "told [Boyce] this was being done for cost cuting [sic] measures.")))

### i. Policy of "Ineffective Treatment"

Boyce repeatedly "invite[s] the Courts to infer from all the bad acts," which he insists are shown through the *Fox* jury verdict, the *Lippert* Report, and the so-called "Wexford rap sheet," that Defendant "has a [sic] unconstitutional policy to provide ineffective treatment this was the moving force" that led to staff not to "send [him] out to gastroenterologist and stopped them from giving me diapers." (Dkt. 105, pg. 30) His position has several problems. First, although in some instances the existence of a policy may be inferred from widespread particular repetitive behavior, *see Daniel*, 833 F.3d at 734; Dixon, 604 F.3d at 303, Boyce does not show any particular repeated behavior that would evidence a policy or policy gap. He makes no attempt to connect the behaviors responsible for "ineffective treatment" in other cases to his own. The referenced "policy," of "provid[ing] ineffective treatment" simply is too broad to suggest a particular pattern of behavior that might have been modified in an identifiable way through a policy change. Similarly, Boyce does not point to any particular repetitious oversight or error suggesting to systemic issues with "staffing, facilities, equipment, or procedures in a detention center's medical system," demonstrated by the cited sources, that also caused any deficiencies in his care. *Daniel*, 833 F.3d at 734-35; *see also Williams v. Godinez*, No. 13 C 8797, 2016 WL 4945016, at *11 (N.D. Ill. Sept. 16, 2016) ("It is unclear what 'concrete policy, let alone an unconstitutional one,' *Olive v. Wexford Corp.*, 494 Fed. Appx. 671, 673 (7th Cir. 2012), plaintiff is identifying" through reliance on *Lippert* and association reports.).

Second, despite his broad characterizations as to what can be gleaned from these sources as a whole, Boyce provides no specific citations within those items where support for the alleged "ineffective treatment" policy may be found. While the Court understands him to argue that he relies upon anecdotal nationwide accounts of alleged deficiencies in medical care to establish other "bad acts" to bolster his claim of "bad acts" within his medical care, as explained above, the *Fox* verdict is

irrelevant, and neither the *Lippert* Report nor the "Wexford rap sheet" are admissible for the truth of their content. Third, the Federal Rules of Evidence specifically forbid the inference Boyce invites. Boyce does not identify how "bad acts" evidence might attack a witness's character for truthfulness, *see* Fed. R. Evid. 608, and such evidence offered for any other purpose is prejudicial and prohibited. Fed. R. Evid. 403, 404(a)(1). Absent these items being admitted for their truth,[12] Boyce relies solely on his own allegedly mismanaged care to establish a policy or widespread practice and thus does not demonstrate a genuine issue of material fact on this issue. *See Daniel*, 833 F.3d at 734-35; *see also Conwell v. Johnsen*, No. 12 C 10062, 2016 WL 6661169, at *22 n.11 (N.D. Ill. Nov. 9, 2016) ("If Plaintiff is relying upon other provisions in the 2008 [DOJ] Report to support his *Monell* claim, he does not specifically identify those provisions and it is not this Court's job to 'sift through the record and make the case for a party.'") (quoting *Hunt ex rel. Chiovari v. Dart*, 754 F. Supp. 2d 962, 980 (N.D. Ill. 2010) (further citation omitted).

### ii.    "Tertiary Stage" Policy

Boyce argues next that Defendant's IDOC contract demonstrates its policy "to not send out patients unless its in the tertery [sic] stage means like third basical [sic] final staged before a patient can be seen at outside hospital and that only a certain amount can be sent out." (Dkt. 105, pg. 13, ¶ 5 (citing to "pliff ex I, J. K, L, M.)) The Court assumes that this language may be used to establish the existence of a "policy" for the purposes of a claim under *Monell*. That language, however, does not set an unyielding cap on the number of inmates sent to UIMCC for care but permits greater numbers to be sent with "prior approval." (Dkt. 105, pg. 115.) In any case, Boyce does not connect this

---

[12] While Boyce might have been able to use the *Lippert* Report to establish knowledge that Defendant knew that the monitor had reported certain issues, *see Daniel*, 833 F.3d at 743; (Dkt. 105, pgs. 16, 21-22, 26, 34, 37), the Court need not reach that issue because Boyce has failed to establish an unconstitutional policy responsible for his alleged injuries.

purported policy with the alleged deficiencies in his care. He does not, for example, provide any evidence that medical professionals awaited a "tertiary stage" of GERD before sending him for a consultation with a specialist, or that they had exceeded any contractual limits for sending inmates for external care. *See Williams*, 2016 WL 4945016, at *11 ("Assuming that the reports in fact describe systemic staffing failures at Stateville, though, plaintiff fails to connect such a finding to the facts of this case," in that plaintiff did not connect such staffing issues "with that plaintiff says were the constitutional deficiencies in [doctor's] provision of medical care").

### iii. "Cost Cutting" Policy

Boyce finally argues that he has demonstrated an unwritten Wexford policy to cut costs because he insists that "every" single medical staff person refused his requests for particular treatment methods, such as "diapers," special food trays, and a referral to a "stomach specialist," due to cost. The Court is dubious that this vague reference to numerous conversations with unnamed medical personnel establishes a cost cutting policy attributable to Defendant. Although Boyce dismisses as a "bogus excuse" Defendant's argument that this theory is subverted by the fact that Boyce *was* sent to a specialist—albeit not the "stomach specialist" he preferred—to treat his GERD, the Court agrees that, without more, Boyce has not sufficiently demonstrated a question of material fact as to whether cost, rather than medical discretion, dictated the choice of professional. Boyce has not, after all, shown that a "stomach specialist" was more expensive than the otolaryngologist he saw. *See Barrow v. Wexford Health Sources, Inc*., No. 3:14-CV-800-NJR-DGW, 2017 WL 784562, at *11 (S.D. Ill. Mar. 1, 2017) (granting summary judgment for Wexford where plaintiff provided no evidence that his preferred medications were more expensive than prescribed medications); *Talley v. Trost*, No. 14-cv-0948-MJR-SCW, 2015 WL 5468355, at *3 (S.D. Ill. Sept. 17, 2015) (declining plaintiff's request

for a preliminary injunction as to his request to be prescribed Protonix, as opposed to other medications he was receiving, to treat GERD). For all of these reasons, the Court grants Defendant's motion for summary judgment in its entirety.

## CONCLUSION

For the above reasons, Plaintiff's motion for sanctions (contained within [105]) is denied. Plaintiff's "motion to clarify matters" [97] is administratively terminated. Plaintiff's "motion to object and strike Def reply" [101] is denied. Defendant's motion for summary judgment [90] is granted in its entirety. Plaintiff's federal claims are dismissed with prejudice. As this ruling addresses all of Plaintiff's claims, the Clerk is directed to enter final judgment.[13]

**Dated: April 24, 2017**

**AMY J. ST. EVE**
**United States District Court Judge**

---

[13] As Boyce is aware, if he wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Boyce appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Ibid.* If Boyce seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1).

Boyce can file an appeal without bringing a motion to reconsider this Court's ruling. If he wishes this Court to reconsider its judgment, however, he may file a motion under Federal Rules of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. Fed. R. Civ. P. 59(e). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. Fed. R. Civ. P. 60(c)(1). The time to file a Rule 59(e) or Rule 60(b) motion cannot be extended. Fed. R. Civ. P. 6(b)(2). A Rule 59(e) or Rule 60(b) motion suspends the deadline for filing an appeal until the ruling on the motion, but only if the motion is filed within 28 days of the entry of judgment. Fed. R. App. P. 4(a)(4)(A)(iv) and (vi).